No 07-165C

(Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HERNANDEZ, KROONE AND ASSOCIATES, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

**PLAINTIFF HERNANDEZ, KROONE AND ASSOCIATES, INC.'S
MOTION FOR ATTORNEYS' FEES**

Richard Mah
Hunt Ortmann Palffy Nieves
Darling & Mah, Inc.
301 North Lake Avenue
7th Floor
Pasadena, CA 91101
Tel: 626-440-5200
Fax: 626-796-0107

Counsel for Plaintiff Hernandez, Kroone &
Associates, Inc.

# TABLE OF CONTENTS

**Page**

I.      HKA's Application Is Timely Under the EAJA ................................................... 3

II.     HKA Is An Eligible Corporate Party Under The EAJA ..................................... 4

III.     HKA Is A "Prevailing Party" Under the EAJA ................................................ 4

IV.     USA's Position Was Not Substantially Justified ............................................... 6

V.      No Special Circumstances Exist To Render An Award Unjust ........................ 15

VI.     HKA Is Entitled To A Cost Of Living Adjustment On Its Award Of Fees ...... 16

VII.     HKA Is Entitled To Enhanced Fees Based On Special Factors ....................... 18

VIII.   Supplemental Fees ........................................................................................ 21

IX.     HKA Is Entitled To Recover Its Paralegal Fees At Prevailing Market Rates ... 21

X.      HKA Is Entitled To Its Expert's Costs ........................................................... 22

XI.     HKA Is Entitled To Its Other Incurred Expenses ........................................... 23

XII.    HKA Has Provided Its Itemized Fees and Expenses ...................................... 24

XIII.   Conclusion .................................................................................................... 25

PLAINTIFF HERNANDEZ, KROONE AND ASSOCIATES, INC.'S
MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Abela v. Gustafson, 888 F.2d 1258 ................................................................... 15

Aston v. Secretary of Health and Human Services, 808 F.2d 9, 12 (2d Cir. 1986) ..................... 23

Baldi Bros. Constructors v. United States, 52 Fed. Cl. 78 ........................................ 19

Buckhannon Board of Care & Home Inc. v. West Virginia Department of Health and
    Human Resources, 532 U.S. 598, 603 (2001) ................................................... 5

California Marine Cleaning, Inc. v. United States, 43 Fed. Cl. 724 ............................... 16

Cinciarelli v. Reagan, 729 F.2d 801, 809 (D.C. Cir. 1984) ........................................ 21

Clark v. Busey, 959 F.2d 808, 810 (9th Cir. 1992) ................................................ 6

Cleaning, Inc. v. United States, 43 Fed. Cl. 724, 733-734 (Fed. Cl. 1999) ....................... 17

Cmty. Heating & Plumbing Co. v. Garrett, 2 F.3d 1143, 1146 (Fed. Cir. 1993) ..................... 5

Commissioner, INS v. Jean, 496 U.S. 154, 160 (1990) ............................................. 7

Daewoo Engineering and Construction Co. v. United States, 557 F.3d 1332 (Fed. Cir.
    2009) ....................................................................................... 8

Daewoo Engineering and Construction Co., 557 F.3d at 1339 ....................................... 8

Davidson v. Veneman, 317 F.3d 503, 506 (5th Cir. 2003) .......................................... 6

Doty v. United States, 71 F.3d 384, 386 (Fed. Cir. 1995) ........................................ 6

Farrar v. Hobby, 506 U.S. 103, 112 (1992) ...................................................... 5

Filtration Dev. Co. LLC, 63 Fed. Cl. at 618 .................................................... 5

Filtration Dev. Co. LLC, 63 Fed. Cl. at 625 ................................................... 16

Filtration Dev. Co., LLC v. United States, 63 Fed. Cl. 612, 618 (2005) ......................... 5

Filtration Dev. Co., LLC v. United States, 63 Fed. Cl. 612, 626 (2005) ......................... 3

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ................................................. 5

Hillensbeck, 74 Fed. Cl. at 483 ................................................................ 17

International Woodworkers of America v. Donovan, 792 F.2d 762, 767 (9th Cir. 1985) ............. 23

Jean v. Nelson, 863 F.2d 759, 777-778 (11th Cir. Fla. 1988)......................................23

Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. Fla. 1988)..............................................21

Kali v. Bowen, 854 F.2d 329, 332 (9th Cir. 1988) ........................................................6

KMS Fusion v. United States, 39 Fed. Cl. 593, 605 (Fed. Cl. 1997) .........................23

Martin v. Heckler, 773 F.2d 1145 ...............................................................................15

Melka Marine, Inc. v. United States, 29 Fed. Appx. 594, 598 (Fed. Cir. 2002)...........3

Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991)) .........................................................4

Miles v. Bowen, 632 F. Supp. 282 ...............................................................................19

Neal & Co., Inc. v. United States, 121 F.3d 683, 685 (Fed. Cir. 1997)........................5

O'Brien Gear and Machine Co. v. United States, 219 Ct. Cl. 187 (Ct. Cl. 1979)..........8

O'Brien Gear and Machine Co., 219 Ct. Cl. at 193 ......................................................8

Oliveira v. United States, 827 F.2d 735 ......................................................................16

Pierce v. Underwood, 487 U.S. 552, 565 (1988) ..........................................................6

Pierce, 487 U.S. at 565..................................................................................................6

Pirus v. Bowen, 869 F.2d 536, 541-42 (9th Cir. 1989)...............................................18

Raines v. Shalala, 44 F.3d 1355 ..................................................................................18

Rice Servs., Ltd. v. United States, 405 F.3d 1017, 1025 (Fed. Cir. 2005) ...................5

Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 138 (4th Cir. 1993) .................7

Rueda-Menicucci v. Immigration & Naturalization Serv., 132 F.3d 493....................18

Scarborough v. Principi, 541 U.S. 401, 414 (2004)......................................................6

Shooting Star Ranch, LLC v. United States, 230 F.3d 1176, 1178 (10th Cir. 2000) ....4

Sorenson v. Mink, 239 F.3d 1140................................................................................17

Thangaraja v. Gonzales, 428 F.3d 870, 874 (9th Cir. 2005).........................................7

Thomas v. Nat'l Sci. Found., 330 F.3d 486, 492-93 (D.C. Cir. 2003)..........................5

United States v. Heavrin, 330 F.3d 723, 732 (6th Cir. 2003) .......................................4

PLAINTIFF HERNANDEZ, KROONE AND ASSOCIATES, INC.'S
MOTION FOR ATTORNEYS' FEES

## FEDERAL STATUTES

28 U.S.C. § 2412(d) ................................................................................................ 2

28 U.S.C. § 2412(d)(1)(A) ...................................................................................... 4

28 U.S.C. § 2412(d)(1)(B) ...................................................................................... 3

28 U.S.C. § 2412(d)(2)(A) ...................................................................................... 2

28 U.S.C. § 2412(d)(2)(A)(i) ................................................................................ 23

28 U.S.C. § 2412(d)(2)(B)(ii) .................................................................................. 4

28 U.S.C. § 2412(d)(2)(D) ...................................................................................... 6

28 U.S.C. § 2514 ...................................................................................................... 8

31 U.S.C.  § 3729 et seq. (FCA) ............................................................................ 8

31 U.S.C.  § 3730(g) ................................................................................................ 2

41 U.S.C. § 7101 ...................................................................................................... 2

41 U.S.C. § 7103 (CDA) ........................................................................................ 8

41 U.S.C. § 7104(b)(1) ............................................................................................ 2

## RULES

RCFC Rule 6(a)(1)(C) .............................................................................................. 4

Rule 54(d)(2) ............................................................................................................ 2

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HERNANDEZ, KROONE AND ASSOCIATES, INC. | Case No. 07-165C |
| Plaintiff, | (Judge Merow) |
| v. | **PLAINTIFF HERNANDEZ, KROONE AND ASSOCIATES, INC.'S MOTION FOR ATTORNEYS' FEES** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Pursuant to 28 U.S.C. § 2412(d) of the Equal Access to Justice Act ("EAJA"), 31 U.S.C. § 3730(g) of the False Claims Act ("FCA"), Rule 54(d)(2) of the Rules of the United States Court of Federal Claims ("RCFC") and Rule 54(d)(2) of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff, Hernandez, Kroone and Associates, Inc. ("HKA"), respectfully submits the following application for an award of attorneys' fees and related nontaxable expenses it has incurred in this matter against Defendant, United States of America ("USA").[1]

This Court maintains jurisdiction over this action pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101, et seq., and is empowered to award attorneys' fees and related nontaxable expenses. See 41 U.S.C. § 7104(b)(1)("...[A] contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary."); see also 28 U.S.C. § 2412(d) and (f)

---

[1] A copy of AKA's Court of Federal Claims Form 5 is attached hereto as Exhibit "A." "Fees and other expenses" are defined to include "the reasonable expenses of expert witnesses, the reasonable cost of any study [or] analysis...which is found by the court to be necessary for the preparation of the party's case," as well as "reasonable" attorneys' fees. 28 U.S.C. § 2412(d)(2)(A).

(outlining basis for entitlement to attorneys' fees and nontaxable expenses, and defining "court" to include the United States Court of Federal Claims).

A corporate party, such as HKA, that seeks to recover attorneys' fees and related nontaxable expenses under the EAJA must submit a timely application to the Court specifying the amount of fees and expenses sought and demonstrate that the party meets the net worth and size restrictions set forth in the EAJA. 28 U.S.C. § 2412(d)(1)(B). Additionally, to obtain such an award, the application must be made by a prevailing party and allege that the position of the government was not substantially justified. Id. at § 2412(d)(1)(A).[2]

As demonstrated below, HKA is a prevailing party in this matter and is eligible to receive an award under 28 U.S.C. § 2412(d) for reasonable attorneys' fees and expenses which were incurred in this lengthy and vigorously fought proceeding.[3]

## I.    HKA's Application Is Timely Under the EAJA

A party seeking an award of fees and other expenses shall submit its EAJA application within thirty days of final judgment. 28 U.S.C. § 2412(d)(1)(B). Under the EAJA, "'final judgment' means a judgment that is final and not appealable..." 28 U.S.C. § 2412(d)(2)(G). "The non-appealability requirement of § 2412(d)(1)(B) has been interpreted to mean that 'the 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired.'" Melka Marine, Inc. v. United States, 29 Fed. Appx. 594, 598 (Fed. Cir. 2002) (unpublished opinion)

---

[2] Specifically, the EAJA authorizes an award to:

[A] prevailing party other than the United States [of] fees and other expenses...incurred by that party in any civil action ...brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

[3] A successful applicant under EAJA also is entitled to recover the legal fees and expenses it incurs in preparing and defending an EAJA application in addition to the fees and expenses the applicant incurred in the underlying litigation. Filtration Dev. Co., LLC v. United States, 63 Fed. Cl. 612, 626 (2005) ("Courts have consistently held that a plaintiff may recover fees and expenses associated with preparing an EAJA application"). Accordingly, HKA's fees and expenses continue to accrue as it defends its application in this Court.

(quoting Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991)). The Court's final judgment was entered on April 1, 2013. The appeal period as to the final judgment will not expire until May 31, 2013. Federal Rules of Appellate Procedure 4(a)(1)(B). HKA's application is therefore due by June 30, 2013, which is a Sunday. Per RCFC Rule 6(a)(1)(C), the application deadline is extended to Monday, July 1, 2013. Accordingly, this application is timely.

## II.      HKA Is An Eligible Corporate Party Under The EAJA

To be eligible for an award under the EAJA, a corporate party must have a net worth that "did not exceed $7,000,000 at the time the civil action was filed" and "not more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B)(ii).

HKA is a California corporation which, at all times relevant hereto, has been engaged in the business of general construction contracting. On the date this action was filed on March 13, 2007, HKA's net worth did not exceed $7,000,000 and it employed fewer than 500 workers. [Declaration of Richard Hernandez ("Hernandez Decl."), ¶2].[4] As such, AKA meets the criteria under the EAJA with regard to eligible corporate parties.

## III.     HKA Is A "Prevailing Party" Under the EAJA

The EAJA provides that a court shall award fees and expenses to a prevailing party when the government's position was not substantially justified. 28 U.S.C. § 2412(d)(1)(A). The EAJA does not define the term "prevailing party" and, therefore, courts have developed the standard for meeting the "prevailing party" requirement. The Supreme Court has found that "plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

---

[4] Net worth should, at a minimum, be documented by submitting a signed affidavit attesting that the petitioning party met the appropriate requirements at the time the lawsuit was filed. United States v. Heavrin, 330 F.3d 723, 732 (6th Cir. 2003); Shooting Star Ranch, LLC v. United States, 230 F.3d 1176, 1178 (10th Cir. 2000). HKA has gone beyond this minimum and provided its audited financial statements for the years 2006 and 2007.

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Filtration Dev. Co., LLC v. United States, 63 Fed. Cl. 612, 618 (2005). Similarly, the Federal Circuit has found that a plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Neal & Co., Inc. v. United States, 121 F.3d 683, 685 (Fed. Cir. 1997). The Federal Circuit has also determined that in order to demonstrate that it is a "prevailing party," an EAJA applicant must show that it obtained "an enforceable judgment on the merits…" Rice Servs., Ltd. v. United States, 405 F.3d 1017, 1025 (Fed. Cir. 2005). A "prevailing party" is one who "has been awarded some relief by a court." Buckhannon Board of Care & Home Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 603 (2001).

However, a party need not prevail on every claim litigated to be a prevailing party. Filtration Dev. Co. LLC, 63 Fed. Cl. at 618 ("[C]ourts have not declined to award [prevailing party] status merely because the party did not secure every aspect of the relief it was seeking"). Indeed, courts will grant EAJA fees even if a plaintiff prevails on only one claim and even if that claim represents only a tiny fraction of the entire relief sought. See Farrar v. Hobby, 506 U.S. 103, 112 (1992) ($1 judgment on a $17 million claim); Cmty. Heating & Plumbing Co. v. Garrett, 2 F.3d 1143, 1146 (Fed. Cir. 1993) (prevailing on one of seven claims).

On April 1, 2013, this Court entered judgment in favor of HKA on HKA's affirmative claims and in favor of HKA on USA's fraud counterclaims. Thus, HKA is a prevailing party in this matter because the Court ordered a change in the legal relationship between the parties, a judgment was entered in HKA's favor both on its affirmative claims and in defense of USA's counterclaims and the judicial order confers judicial relief upon HKA. See Thomas v. Nat'l Sci. Found., 330 F.3d 486, 492-93 (D.C. Cir. 2003).

//

IV.    **USA's Position Was Not Substantially Justified**

Pursuant to the EAJA, a prevailing party is entitled to its reasonable attorneys' fees and expenses unless the government can demonstrate that its position was substantially justified. Scarborough v. Principi, 541 U.S. 401, 414 (2004). The Supreme Court has defined "substantially justified" as meaning: "'justified in substance or in the main' - that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988).

The government bears the burden of proving that its position as relates to this action was "substantially justified." Davidson v. Veneman, 317 F.3d 503, 506 (5th Cir. 2003) ("The burden of proving substantial justification falls to the Government"). As such, "the prevailing party's entitlement to an award under the EAJA is **presumed**, unless the government's position in the challenged conduct and in the litigation itself is 'substantially justified.'" Clark v. Busey, 959 F.2d 808, 810 (9th Cir. 1992) (**emphasis added**). In order to meet this heavy burden of proof, the government must show that its position has a "reasonable basis both in law and in fact." Pierce, 487 U.S. at 565. The government must meet this threshold twice -- it must independently establish that the agency action that gave rise to the litigation was substantially justified and that its litigation positions were also substantially justified. 28 U.S.C. § 2412(d)(2)(D).[5] In determining substantial justification, the court must look at "the government's position throughout the dispute, including not only its litigating position but also the agency's administrative position." Doty v. United States, 71 F.3d 384, 386 (Fed. Cir. 1995).

Thus, if the court finds that the government's underlying, pre-litigation conduct lacks substantial justification, the court need not consider whether its litigation positions were

---

[5] "The inquiry into the existence of substantial justification therefore must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." Kali v. Bowen, 854 F.2d 329, 332 (9th Cir. 1988) .

substantially justified. <u>Commissioner, INS v. Jean</u>, 496 U.S. 154, 160 (1990) ("The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility").[6] In addition, courts have remarked that it is a "decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." <u>Thangaraja v. Gonzales</u>, 428 F.3d 870, 874 (9th Cir. 2005) (Order).

This case is replete with unreasonable and unsupported government conduct with regard to its administrative and litigation positions. In this case, the government cannot establish that its position, in whole or in part, at the agency level or before this Court, was substantially justified so as to preclude an award of attorneys' fees and nontaxable expenses under the EAJA.

HKA filed suit against the government seeking an equitable adjustment arising out of extra-contractual work it performed at the Border Patrol Station ("Project"). The affirmative claim(s) consisted of (1) A claim arising out of Contract Modification No. R00003 for lights, cameras and poles, (2) A claim arising out of an excessive credit taken by the government related to Contract Modification No. R00004, and (3) A claim arising out of the seal coat and restriping of the parking lot at the government's direction (collectively "Affirmative Claims"). All of HKA's Affirmative Claims had been denied by the contracting officer thereby necessitating the filing of suit by HKA. [Opinion at 30-31]. In retaliation, the government alleged, among other things, FCA claims and CDA fraud claims against HKA that had no basis in law or fact. HKA

---

[6] "...<u>Jean</u> instructs that a single finding of governmental misconduct compelling a party to resort to litigation or to prolong litigation can open the door to recovery under the EAJA..." <u>Roanoke River Basin Ass'n v. Hudson</u>, 991 F.2d 132, 138 (4th Cir. 1993).

prevailed on **two-thirds** of its Affirmative Claims as well as on the entirety of its defense of the government's FCA Claims.

The FCA Claims arose predominantly out of the equitable adjustment CDA claims HKA submitted to the government contracting officer associated with Modification No. R00003. HKA alleged that the modification comprised a change in contract scope to which it was entitled additional compensation. The government alleged that the submission of this claim constituted a "fraudulent" claim exposing HKA to liability under 31 U.S.C. § 3729 et seq. (FCA), 41 U.S.C. § 7103 (CDA) and 28 U.S.C. § 2514 (Special Plea in Fraud) (collectively "FCA Claims"). [Opinion at 41-42].

Each of the above mentioned FCA Claims requires an element of scienter, knowledge, intent, deception, etc. in order to trigger liability under each respective section. [Opinion at 41-42]. However, as noted by the Court, the government was unable to establish any such requisite element on the part of HKA. This is because none existed.

The government attempted to justify its FCA Claims in reliance on, and by attempted analogy to, Daewoo Engineering and Construction Co. v. United States, 557 F.3d 1332 (Fed. Cir. 2009), and to a lesser extent on and to O'Brien Gear and Machine Co. v. United States, 219 Ct. Cl. 187 (Ct. Cl. 1979). [Defendant's Post-Trial Brief at 34 and 36 and Opinion at 49-50]. However, this matter and HKA's claims did not resemble either scenario in the slightest. HKA did not file a grossly excessive claim as a "negotiating ploy" or to simply get the "Government's attention" as was the case in Daewoo. Daewoo Engineering and Construction Co., 557 F.3d at 1339. Nor did HKA's claim involve prior criminal fraud convictions, forged documents, false checks and/or bribes as was the case in O'Brien. O'Brien Gear and Machine Co., 219 Ct. Cl. at 193 and 198. The government's attempts to analogize the facts in this matter to either of the above cases is disingenuous and was a flagrant overreaching on the government's part.

8

With respect to the government's arguments relating to <u>Daewoo</u>, the Court succinctly and summarily did away with them by stating:

> There is no evidence in the instant case similar to that in Daewoo. Defendant did not present evidence, as to the portion of HKA's CDA claim estimates that HKA would be unable to support, attributed to some specific misrepresentation of fact or fraud. In the absence of such evidence, defendant has not met its burden of proof. [Opinion at 49].

With respect to the government's arguments relating to <u>O'Brien</u>, the Court did the same and clearly disagreed with the government's purported position that HKA's presentation of its claims was "nearly a carbon copy of the situation in which the court in *O'Brien* warranted forfeiture." [Defendant's Post-Trial Brief at 34 and Opinion at 50] (*emphasis in original*). The Court stated:

> There is no similar evidence in the instant case. No forged documents, bribes, false checks or similar false records were produced. Defendant presented no viable evidence that HKA's CDA claim estimates were false and the "falsities" defendant did assert have been shown not to be supported by the required preponderant evidence to establish fraud, and clearly not by the enhanced burden of clear and convincing evidence needed to support forfeiture. [Opinion at 50].

In its analysis of the FCA Claims set forth in the Court's Opinion on pages 38 through 50, the Court often remarked that the facts as set forth in the instant matter simply do not and could not constitute the type of fraudulent behavior against which the above-referenced statutes are intended to guard. A sampling of the Court's remarks follows:

> …[T]he somewhat unorthodox manner in which the contract was negotiated initially with GMC and subsequently with HKA to satisfy an 8(a) award obligation, left ample room for argument as to the scope of work involved. [Opinion at 43].

> …[T]he evidence supports HKA's sincerity in this regard, if not its validity, and HKA did not knowingly present a false or fraudulent claim on December 13, 2005 or thereafter by asserting that their January 25, 2005 proposal was not part of the scope of work in the awarded contract. [Opinion at 43].

The listing in HKA's claims of contractors anticipated to perform the work and the estimated cost involved, in the absence of claims from the contractors does not comprise a "falsity." Richard Hernandez testified he developed the estimated costs listed in the claim spreadsheets with the aid of Caltrans data and rental rate books. (Tr. 211.) Use of rate compilation books to estimate cost is an accepted construction industry practice. (citations omitted). [Opinion at 43-44].

The Caltrans evaluation does not support defendant's assertion that the claimed 172% G&A rate is false. It merely states that adjustments for the 2004 contract there involved results in a recommendation that, while 172% was proposed, 165% was appropriate for that contract. HKA's December 23, 2005 claim asserts that its G&A rate was stable and has "always been in the range of 165% to 173%." (JX 189.011.) No probative record evidence has been cited to prove the contrary. (See, e.g., Tr. 2622-23.) In this circumstance, defendant has not carried its burden of proof and the 172% rate has not been proven to comprise a "falsity." [Opinion at 44-45].

No proof of a knowing "falsity" has been established in the record evidence on this $15,000.00 estimate matter. [Opinion at 45].

Defendant offered no evidence to support its allegation that the estimate when submitted was false and has not satisfied its burden of proof in this regard. [Opinion at 46].

If defendant is, contrary to the indications in its briefing, asserting these allocation issues as another "falsity," there is a dearth of evidence pointing to a knowing false submission by HKA...The trial evidence on damages supports HKA ineptitude with respect to its accounting record analysis, not fraud. [Opinion at 47].

Ultimately, the Court stated that "defendant has not met its burden of proof under any of the three 'fraud' statutes involved" [Opinion at 47] and concluded that "[a] careful review of the testimony and documents presented in this case results in the conclusion that defendant has not proven that HKA knowingly presented false or fraudulent claims to the government." [Opinion at 50]. Concurrently, the government cannot carry its burden that its position with respect to the FCA Claims was substantially justified and HKA is entitled to an award of attorneys' fees and nontaxable expenses.

//

//

In addition to the above factual analysis relating to the FCA Claims, the lack of substantial justification is also supported by an analysis of extrinsic evidence and various comments made between counsel throughout this matter. Counsel for HKA, Laurence Lubka, often engaged in discussions with counsel for the USA, Matthew Solomson, regarding the validity of the FCA Claims as well as resolution of the matter. Mr. Solomson indicated that it was his intention to use <u>Daewoo</u> to set a new standard for FCA counterclaims against small companies and that it was the Department of Justice's ("DOJ") plan to use the HKA case to establish a precedent with regard to Daewoo that could then be used against larger defendants. [Declaration of Laurence Lubka ("Lubka Decl."), ¶2]. Mr. Solomson also indicated to Mr. Lubka at the outset of the HKA litigation that he had recently moved to the DOJ from a large law firm in order to augment his trial experience before returning to private practice. [Lubka Decl., ¶3]. Such information sheds light on the government's motives for bringing and prosecuting the FCA Claims up to and through trial and provides further evidence that the government most certainly lacked substantial justification as to the same.

Additionally, shortly before the end of the HKA trial, Mr. Solomson achieved his goal of re-entering the private sector by joining a prestigious D.C. firm in the Government Contracts practice. [Lubka Decl., ¶4]. While there, Mr. Solomson penned a Briefing Paper with the following instructional title:

**WHEN THE GOVERNMENT'S BEST DEFENSE IS A GOOD OFFENSE: LITIGATING FRAUD AND OTHER COUNTERCLAIM CASES BEFORE THE U.S. COURT OF FEDERAL CLAIMS.** [Lubka Decl., ¶5].

The entire article is attached to the Declaration of Mr. Lubka for the Court's convenience, however the following passage is helpful in the instant analysis and to the ultimate question of whether the FCA Claims were substantially justified:

The U.S. Federal Government is always the defendant in cases before the U.S. Court of Federal Claims. The Federal Government cannot initiate suit in the COFC; rather, a private party initiates an action in the COFC by filing suit against the Federal Government, which is represented, in such cases, by the U.S. Department of Justice. The initial litigation risk calculus performed by the assigned DOJ trial attorney handling a COFC matter often favors the plaintiff because, from the Government's point-of-view, as the defendant, there is only downside. In other words, assuming that the Government may owe the plaintiff some money, the issue becomes one of quantum only. Put yet differently, the best outcome the Government can hope for at the outset of a case is dismissal or a judgment in the Government's favor, but there is no potential upside.

Counterclaims can be a game changer for the Government because they create a potential upside for the Government to litigate the case to judgment. Counterclaims, therefore, have the capacity to dramatically alter the Government's litigation risk analysis and, in turn, the relative settlement positions held by the parties. Indeed, once filed, counterclaims have the **ability to all but tie the hands of the DOJ trial attorney, precluding the attorney from settling a matter, and thereby locking the plaintiff into a lengthy, and correspondingly costly, contest.** Solomson, Matthew H., <u>WHEN THE GOVERNMENT'S BEST DEFENSE IS A GOOD OFFENSE: LITIGATING FRAUD AND OTHER COUNTERCLAIM CASES BEFORE THE U.S. COURT OF FEDERAL CLAIMS</u>, West Briefing Papers, No. 11-12, November 2011 at p.1-2 (**emphasis added**). [Lubka Decl., ¶5].

The above sets forth Mr. Solomson's apparent position that the best method for the government to have "upside" and gain leverage in a suit against a private party by locking them into a "lengthy" and "costly" legal battle and precluding possible settlement is by bringing a counterclaim. Mr. Solomson implemented this precise strategy against HKA. Rather than evaluating the case on its merits, the government embarked upon an unjustified and unsupported strategy which had little to do with the merits. By turning the case into an action about alleged false claims, it is clear that the government's intent was to force a small company like HKA into giving up its rightful claims. Indeed, just as Mr. Solomson wrote in his Briefing Paper, each time HKA raised mediation or settlement as a way to resolve this case, Mr. Solomson took the position that his hands were tied and that HKA would have to pay the government to settle the

matter. [Lubka Decl., ¶7].[7] In addition, Mr. Solomson was aware of HKA's weak financial

position as confirmed by the HKA financial statements that had been produced to him. [Lubka

Decl., ¶8].

In his article, Mr. Solomson then goes onto discuss the various types of fraud based

counterclaims which best serve the purposes set forth above by stating:

> There are four primary types of fraud-related Government counterclaims: claims
> based upon (1) the FCA, (2) the CDA's fraud provision, (3) the Forfeiture of
> Fraudulent Claims Act, also known as the Special Plea in Fraud, and (4) federal
> common law. [Briefing Paper at 9]. [Lubka Decl., ¶5].

Not surprisingly, the government levied the first three against HKA. Finally, in a

commentary of the instant matter written by Professor Ralph C. Nash of George Washington

University, one of the foremost academics in the country on government contracts, Professor

Nash was critical of the government and offered the commentary as a warning to small

companies engaging in government contracting. [Lubka Decl., ¶9]. Professor Nash stated, in

relevant part:

> As to the fraud counterclaim, the court reviewed all aspects of the contractor's
> December 13 claim but could find no fraud. The court noted that the contractor
> misunderstood the 30-day notice requirement in the "Changes" clause and that the
> Corps did not inform the contractor of this misunderstanding. The ACO's letter of
> November 15 may well have been the basis for this misunderstanding. It seems
> clear from the extensive discussion of the elements of fraud in the decision that
> the court saw an uneducated contractor but not a contractor with the intent to
> defraud the Government.

> The initial problem the contractor faced was that it was required to meet a number
> of Government requirements for plans (accident prevention, quality control, and
> activity hazard analysis), performance and payment bonds, and the payment of
> Davis-Bacon wage rates. Fortunately, it was competent enough to deal with these

---

[7] Notwithstanding several requests by Mr. Lubka to Mr. Solomson that the parties submit the HKA dispute
to an alternative dispute resolution mechanism ("ADR"), Mr. Lubka was told repeatedly that the DOJ was not
interested in mediation or other ADR. This was stated both in direct communications and in at least one hearing
before the judge. [Lubka Decl., ¶6]. As such, it seems apparent from the above facts as well as from Mr.
Solomson's Briefing Paper that once the FCA Claims were filed, HKA was doomed to go to trial.

issues. But it could not overcome the impact of the Corps transferring the administration of the contract to another district. That led to continual misunderstandings as to the work that was called for--likely because the new Corps people were unaware of the exchange that occurred between the parties when the contract was entered into. The culmination of this problem was the misinformation on the disputes process conveyed by the ACO to the contractor on November 15 and the contractor's complete lack of knowledge as to the workings of that process. As a result, the parties stumbled into seven years of litigation, including the fraud counterclaim.

There are three conclusions that we can reach from this story. First, even competent commercial contractors should not compete for Government contracts unless they are willing to retain or employ experienced people who know how to deal with the Government. This case is a classic example of how demanding this can be and how important it is for contractors to know the rules of the game.

Second, when the Government decides to use a commercial company that has never dealt with the Government (in this case using 8(a) procedures), the Government personnel should initially teach the contractor how to deal with the Government. That would not have solved the problem in this case because the Government people either didn't know the rules or created problems with their own internal squabbles. But the second conclusion is still valid. Without help from the Government people administering the contract, the new commercial contractor is in for a rough ride.

Third, Department of Justice lawyers need to distinguish between fraud and honest misunderstandings and mistakes. The decision makes it clear that fraud counterclaims should not be filed against commercial companies that wander into Government contracting with their eyes shut but have no intent to cheat or steal. 27 NO. 5 Nash & Cibinic Rep. ¶22 (ATTRACTING COMMERCIAL COMPANIES TO GOVERNMENT CONTRACTING: A Case Study). [Lubka Decl., ¶9].

The above-referenced comments/articles serve to reinforce the factual analysis that the

government's FCA Claims were at best, brought with poor judgment and without a competent

analysis relating to the validity of the claims, or at worst, brought as a retaliatory measure

intended to squeeze a small contractor into a compromised financial and/or settlement position.

Either way, it is apparent that the government's FCA Claims were not only brought without

substantial justification, but had been brought because the DOJ believed that HKA was an easy

target and, given its weak financial condition, could be made the fall guy for a precedent that the

DOJ could then use against other contractors. For these reasons, HKA is entitled to full recovery of its attorneys' fees and related nontaxable expenses incurred in defense of the FCA Claims.

In addition, HKA should be awarded its attorneys' fees related to its Affirmative Claims as the prevailing party, or at the least a pro-rated amount of total fees incurred in prosecution of its claims based on its percentage recovery. As set forth at trial in this matter and in HKA's Opposition to the government's Motion for Reconsideration (ECF No. 209), said recovery was based on (1) An excessive credit taken by the government relating to Modification No. R00004, and (2) The costs arising out of application of a complete seal coating to the entirety of the parking lot (and additional restriping) that was directly attributable to the government's conscious decision to disregard the advice of the paving subcontractor with respect to the type of gravel to be used. [Opinion at 36-38]. See also Opposition to Motion for Reconsideration (ECF 209) and Court's Order re: Motion for Reconsideration (ECF 211). The government cannot be said to have acted with substantial justification in denying HKA's entitlement to these monies.

## V.   No Special Circumstances Exist To Render An Award Unjust

The government has the burden of proving the existence of special circumstances that would make a fee award unjust. 28 U.S.C. § 2412(d)(1)(A); Abela v. Gustafson, 888 F.2d 1258, 1266 (9th Cir. 1989). This provision of the EAJA is to be narrowly construed so as to not interfere or defeat Congress's purpose in passing the EAJA. Martin v. Heckler, 773 F.2d 1145, 1149 (11th Cir. 1985). HKA is not aware of any special circumstances that would make an award unjust in this case. To the contrary, the award of fees and costs in this case should have the salutary effect of curbing baseless litigation by the government.

//

//

//

**VI.**     <u>**HKA Is Entitled To A Cost Of Living Adjustment On Its Award Of Fees**</u>

EAJA fees are based upon "prevailing market rates for the kind and quality of the services furnished, except…attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). As such, the EAJA affords a court the discretion to award attorneys' fees at a rate higher than the $125 hourly rate where such an award is justified due to an increase in the cost of living in the time since Congress enacted the statutory cap in 1996. <u>Oliveira v. United States</u>, 827 F.2d 735, 744 (Fed. Cir. 1987).

"When a plaintiff seeks a cost of living adjustment, the 'justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ("CPI")."' <u>Filtration Dev. Co. LLC</u>, 63 Fed. Cl. at 625. "[T]his court has 'declined to impose a requirement than [sic] an applicant must do more than request such an adjustment and present a basis upon which the adjustment should be calculated."' <u>Id</u>. The adjusted hourly rate equals $125 per hour increased by the percentage increase in the Consumer Price Index for All Urban Consumers ("CPI-U"). Courts in Washington, D.C. routinely use this Index to correspondingly increase the $125 per hour rate in the EAJA as a cost of living adjustment ("COLA"). <u>California Marine Cleaning, Inc. v. United States</u>, 43 Fed. Cl. 724, 733 (Fed. Cl. 1999); <u>Hillensbeck v. United States</u>, 74 Fed. Cl. 477, 483 (Fed. Cl. 2006).

//

//

//

//

In multiyear litigation, some jurisdictions hold that the rate for each year is $125 increased by the percentage CPI-U hike from March 1996[8] through that year. Sorenson v. Mink, 239 F.3d 1140, 1148 (9th Cir. 2001). However, the Court of Federal Claims has found that the proper calculation uses the arithmetic mean of the COLAs for every month that services were rendered, i.e., in the instant case from March 2007 to the present. Hillensbeck, 74 Fed. Cl. at 483; California Marine Cleaning, Inc. v. United States, 43 Fed. Cl. 724, 733-734 (Fed. Cl. 1999).

HKA alleges that the CPI-U has risen since March 1996. See Bureau of Labor Statistics, United States Department of Labor, ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt (last visited June 27, 2013). Because the cost of living has increased since 1986, HKA is seeking to adjust the base EAJA rate to include COLAs by calculating the average CPI-U for the period of March 2007[9] through the present (May 2013)[10] which is when legal fees were incurred, and dividing it by the baseline CPI-U for March 1996 of 155.7. The formula is as follows:

$$\$125 \ \text{X} \ \frac{\textbf{(Average CPI-U)}}{\textbf{(March 1996 CPI-U)}} = \textbf{Adjusted EAJA Rate}$$

The arithmetic mean of the CPI-U for the period from March 2007 through May 2013 is 219.627. [Declaration of Richard Mah ("Mah Decl."), ¶2]. This represents a 41.06% increase in the cost of living since March 1996 and results in a factor of 1.4106. Thus, applying a COLA adjustment of 41.06% to the EAJA base rate of $125, the adjusted EAJA rate is $176.32/hour. [Mah Decl., ¶2]. It should be noted that even this adjusted rate is still well below the actual

---

[8] The date Congress amended the EAJA and raised the statutory hourly rate of attorney compensation cap from $75 per hour to $125 per hour.

[9] The date of filing of the Complaint in this action.

[10] The most recent month for which CPI-U information is available.

attorney rates at which HKA's attorneys billed in this matter. [Mah Decl., ¶3 and Lubka Decl., ¶11].

HKA's attorneys' expended a total of 2,284.40 hours in prosecuting and defending this action which are fully itemized, documented and supported in the exhibits attached to Mr. Mah's declaration and Mr. Lubka's declaration. [Mah Decl., ¶4, ¶10 and Lubka Decl. ¶10]. At the full adjusted EAJA rate of $176.32, this results in a total attorneys' fee award of $402,785.40 under the COLA adjustment. HKA respectfully requests that the Court award, at a minimum, $402,785.40 in attorneys' fees pursuant to the EAJA. [Mah Decl., ¶4 and Lubka Decl. ¶10].

## VII.   HKA Is Entitled To Enhanced Fees Based On Special Factors

In addition to the adjusted EAJA rate above, an EAJA fee applicant may be awarded higher market or enhanced rates if "the court determines that…a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A). The Supreme Court has addressed the meaning of the phrase "the limited availability of qualified attorneys for the proceedings involved" as follows:

> We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in litigation. An example of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the [$125] cap, reimbursement above that limit is allowed. Pierce, 487 U.S. at 572.

This requires a showing that (1) the prevailing attorneys possessed specialized expertise; (2) the expertise was needed in the litigation; and (3) the skills needed could not have been obtained at the normal EAJA rates. Rueda-Menicucci v. Immigration & Naturalization Serv., 132 F.3d 493, 496 (9th Cir. 1997); Raines v. Shalala, 44 F.3d 1355, 1360-61 (7th Cir. 1995); Pirus v. Bowen, 869 F.2d 536, 541-42 (9th Cir. 1989).

The special factors that justify an award in excess of $176.32/hour include the following:

1) HKA's selection of counsel in this action was confined to the limited pool of available attorneys admitted to the United States Court of Federal Claims.

2) HKA's attorneys, Hunt Ortmann Palffy Nieves Darling & Mah, Inc. ("Hunt Ortmann") and Lubka & White LLP are dedicated to the specialized practice of construction litigation, with particular emphasis on public construction projects and government contracts.

3) HKA's attorneys who handled this matter have a combined total in excess of 75 years of experience devoted exclusively to these areas of practice.

4) As reflected in the Opinion and Order, the issues of fact and law before the Court were numerous and complex, demanding specialized skill, training and experience of public construction law counsel and said skills were necessary to the prosecution and defense of this action.

5) Hunt Ortmann's fees are well in excess of the statutory cap, as are those fees of similarly accomplished and specialized practitioners. Retention of Hunt Ortmann or a similarly accomplished and specialized practitioner would have been impossible at normal EAJA rates. [Mah Decl., ¶5].

Given the existence of the above-referenced special factors, HKA is entitled to enhanced rates (prevailing market rates) per 28 U.S.C. § 2412(d)(2)(A).

In addition, awarding enhanced rates will advance the public policy in furtherance of which the EAJA was passed by Congress.[11] As mentioned above and detailed below, HKA's

---

[11] Miles v. Bowen, 632 F. Supp. 282, 283 (M.D. Ala. 1986) ("The primary purpose of the EAJA is 'to ensure that [private parties] will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights'") (citing H.R. Rep. No. 120, 99th Cong., 1st Sess. 4, reprinted in 1985 U.S. Code Cong. & Ad. News 132, 132-33)); Baldi Bros. Constructors v. United States, 52 Fed. Cl. 78, 80 (Fed. Cl. 2002) ("The purpose of the EAJA is to eliminate legal expenses as a barrier to challenges of unreasonable government action"); Ellis v. United States, 1 Cl. Ct. 6, 7 (Cl. Ct. (footnote continued)

attorneys' fees far exceed the modest adjusted EAJA rate and payment of the adjusted EAJA rate, although helpful, will far from make HKA whole. If HKA is not made whole, it will naturally be "deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights" and may refrain doing so in the future. Miles v. Bowen, 632 F. Supp. 282, 283 (M.D. Ala. 1986). An award of enhanced rates for all hours expended in prosecuting and defending this action would advance the policy of encouraging more efficient and economical litigation practices by the government. It would also encourage reasonable settlements and deter dogmatism at the agency level which perpetuates obstinately through the expensive litigation phase. HKA has expended seven (7) years and nearly $1,000,000.00 in this action. HKA is entitled to be made whole.

As previously mentioned, HKA's attorneys' expended a total of 2,284.40 hours in prosecuting and defending this action which are fully itemized, documented and supported in the exhibits attached to Mr. Mah's declaration and Mr. Lubka's declaration. [Mah Decl., ¶4, ¶10 and Lubka Decl. ¶10].

Due to multi-year nature of this litigation, Hunt Ortmann's attorney hourly rates changed from year to year. The exact rates for each respective attorney are set forth in the bills backing up the summary of attorneys' fees attached to Mr. Mah's declaration. [Mah Decl., ¶10]. In addition, it should be noted that Hunt Ortmann offered HKA a discounted rate on this matter and that the rates billed to HKA were below Hunt Ortmann's regular hourly rates. [Mah Decl., ¶6].[12] The

---

1982) (affirmed in part and reversed in part on other grounds and superseded by statute on other grounds) ("The primary purpose of the Act is to reduce the economic deterrents to contesting unreasonable governmental actions. (citations omitted). Additionally, the Act is intended to make whole those small business and individuals who have been the victims of unreasonable governmental actions").

[12] Although HKA is entitled to seek compensation for its attorneys' fees at prevailing market rates, which would exceed the discounted rates charged to HKA, HKA is only seeking enhanced EAJA rates at the discounted amounts actually charged by Hunt Ortmann. 28 U.S.C. § 2412(d)(2)(A)(ii); Jordan v. United States Dep't of Justice, 691 F.2d 514, 523 (D.C. Cir. 1982) ("That thesis unmistakably is foreclosed by Copeland's direction that fee (footnote continued)

same is true for Hunt Ortmann's co-counsel (not of record), Lubka &  White LLP. [Lubka Decl. ¶10]. For the reasons set forth above, HKA respectfully requests that the Court award enhanced fees at prevailing market rates totaling $578,496.46 pursuant to the EAJA. [Mah Decl., ¶4, 10 and Lubka Decl. ¶10].

## VIII.   Supplemental Fees

This request will be supplemented subsequent to any opposition filed by the government to include additional fees and expenses associated with filing this application for attorneys' fees. Cinciarelli v. Reagan, 729 F.2d 801, 809 (D.C. Cir. 1984); See also fn.3 above.

## IX.   HKA Is Entitled To Recover Its Paralegal Fees At Prevailing Market Rates

The Supreme Court has declared that paralegal work is recoverable at prevailing market rates. Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 590 (U.S. 2008).[13]  HKA's paralegals expended a total of 1,092.15 hours in prosecuting and defending this action which are fully itemized, documented and supported in the exhibits attached to Mr. Mah's declaration. [Mah Decl., ¶7, 10].

Due to multi-year nature of this litigation, Hunt Ortmann's paralegal hourly rates changed from year to year. The exact rates for each respective paralegal are set forth in the bills backing up the summary of paralegal fees attached to Mr. Mah's declaration. [Mah Decl., ¶10]. For the

---

allowances are basically to be measured by the market value of the services rendered, not the amount actually received by the attorney nor the amount that would have been received absent an award of fees" (citing Copeland v. Marshall, 641 F.2d 880 (D.C. Cir. 1980)); Blum v. Stenson, 465 U.S. 886, 895-896 (U.S. 1984).

[13] "For these reasons, we hold that a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates." See also Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. Fla. 1988) ("To hold otherwise would be counterproductive because excluding reimbursement for such work might encourage attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost").

reasons set forth above, HKA respectfully requests that the Court award HKA its paralegal fees at prevailing market rates totaling $137,198.26 pursuant to the EAJA. [Mah Decl., ¶7, ¶10].

## X.   HKA Is Entitled To Its Expert's Costs

HKA is entitled to recovery of its expert costs incurred in prosecuting and defending this action per 28 U.S.C. § 2412(d)(2)(A) ("'fees and other expenses' includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case...").

HKA retained Nitro Associates ("Nitro") to provide consulting and expert witness services in conjunction with this action. Nitro's services included analysis of HKA's claims as well as the government's counterclaims, preparing for and providing expert witness testimony at oral deposition as well as at trial. The fees and expenses of Nitro are fully itemized, documented and supported in the exhibits attached to Mr. Mah's declaration. [Mah Decl., ¶8]. The total cost associated with Nitro is $62,570.33. [Mah Decl., ¶8].

In addition to Nitro, HKA retained Ossman Project Management Consulting, Inc. ("Ossman") to perform expert services related to this matter. The total cost associated with Ossman is $3,180.00 [Hernandez Decl., ¶3].

A summary of hours, fees and total costs for HKA's experts follows:

| | |
|---|---|
| Nitro | $62,570.33 |
| Ossman | $3,180.00 |
| **Total** | **$65,750.33** |

[Mah Decl., ¶8 and Hernandez Decl., ¶3].

//

//

//

//

HKA alleges that HKA's expert fees were not incurred at a rate in excess of the highest

rate paid by the government for its experts. In the event that the government produces competent

evidence refuting this allegation, HKA will adjust its request for expert fees and costs.[14]

## XI.   HKA Is Entitled To Its Other Incurred Expenses

HKA is also seeking the expenses and costs incurred by its attorneys in this matter

relating to travel, meals, photocopying, legal research, etc.[15] These items are clearly recoverable

under the EAJA. KMS Fusion v. United States, 39 Fed. Cl. 593, 605 (Fed. Cl. 1997) (stating that

that the examples articulated in section 2412(d)(2)(A) are merely illustrative, rather than

exclusive and that if the expenses are reasonably incurred then the plaintiff is entitled to recover

them). These expenses and costs are fully itemized, documented and supported in the exhibits

attached to Mr. Mah's declaration. [Mah Decl., ¶9, ¶10]. In addition, for convenience, HKA is

also electing to pursue those costs to which it would be entitled under 28 U.S.C. § 2412(a) in the

instant EAJA motion in lieu of filing a Bill of Costs (Court of Federal Claims Form 4). KMS

Fusion, 39 Fed. Cl. at 605. These expenses and costs are fully itemized, documented and

supported in the exhibits attached to Mr. Mah's declaration and include costs related to the filing

fee, deposition costs, transcripts, etc. [Mah Decl., ¶9]. The total being sought for these expenses

is $83,433.66. [Mah Decl., ¶9].

---

[14] The statute provides that expert witnesses cannot be compensated at a "rate in excess of the highest rate of compensation for expert witnesses paid by the United States." 28 U.S.C. § 2412(d)(2)(A)(i).

[15] Jean v. Nelson, 863 F.2d 759, 777-778 (11th Cir. Fla. 1988) ("An examination of the nature of the expenses listed in the Act reinforces our reading  of it. Items such as engineering reports and studies are extraordinary expenditures not commonly necessary to the preparation of a lawsuit. By including these unusual items in the list of reimbursable expenses, Congress enlarged, rather than contracted, the category of expenditures that are reimbursable under the EAJA. Thus, we reject the government's argument that telephone, reasonable travel, postage, and computerized research expenses are not compensable under the EAJA") (citing International Woodworkers of America v. Donovan, 792 F.2d 762, 767 (9th Cir. 1985) (expenses routinely billed to a client -- telephone, air courier, attorney travel -- are recoverable under the EAJA) and Aston v. Secretary of Health and Human Services, 808 F.2d 9, 12 (2d Cir. 1986) (affirming award of telephone, postage, travel and photocopying expenses)).

In addition, HKA is seeking all additional expenses incurred by HKA in this proceeding and paid directly by HKA. These expenses and costs are fully itemized, documented and supported in the exhibits attached to Mr. Hernandez's declaration. [Hernandez Decl., ¶4]. The total being sought for these expenses is $6,506.08. [Hernandez Decl., ¶4].

A summary of expenses/costs incurred by HKA in this matter follows:

| | |
|---|---|
| Litigation Costs | $83,433.66 |
| Additional Direct Costs | $6,506.08 |
| **Total** | **$89,939.74** |

[Mah Decl., ¶9 and Hernandez Decl., ¶4].

## XII.   HKA Has Provided Its Itemized Fees and Expenses

HKA is seeking an award of fees, expenses and costs totaling $871,384.79 under the EAJA enhanced rate for special factors, or alternatively, totaling $695,673.73 under the adjusted EAJA cap rate of $176.32/hour, which are fully itemized, documented and supported in the attached declarations and the exhibits to said declarations.[16]

This request is based on HKA having incurred attorneys' fees for 2,284.40 hours of attorney time pursuing this matter. The total amount incurred for attorneys' fees is $578,496.46 under the EAJA enhanced rate for special factors or $402,785.40 under the adjusted EAJA cap rate. All fees claimed by HKA have been incurred in this matter.[17] HKA is also seeking paralegal fees in the amount of $137,198.26 and seeking its expenses and costs totaling $89,939.74 as

---

[16] See Section VIII above.

[17] This effort includes review and analysis to prepare the Complaint as well as preparation of HKA's defense against the government's FCA Claims. This claim also includes the extensive effort involved in preparing for the trial in this matter, which included review and analysis of thousands of pages of documents produced by the government in this case in response to discovery, and preparation for approximately ten depositions. Of note, there were several days of depositions of Richard and Anne Hernandez taken in the DOJ's efforts to substantiate there False Claim Allegation, taken at a time when HKA desperately needed the attention of those two owners to survive the impact of the Corps of Engineers project and the economic downturn. It also includes the ten (10) day trial held in Pasadena and completed in Washington, D.C. wherein testimony totaling 2,460 pages was presented from nine witnesses. Finally, it includes exhaustive and comprehensive post-trial briefings which addressed the extensive record in this matter. All in all, over 210 docket entries were filed in this proceeding.

detailed above. Finally, HKA has attached a declaration from the counsel of record in this

litigation supporting the above. [See Declaration of Richard Mah].

A summary of HKA's requested award under either option follows:

**A) Enhanced Fees Based on Special Factors –**

| | |
|---|---|
| Attorneys' Fees – | $578,496.46 |
| Paralegal Fees – | $137,198.26 |
| Expert Fees – | $65,750.33 |
|     Nitro ($62,570.33) | |
|     Ossman ($3,180.00) | |
| Expenses/Costs – | $89,939.74 |
|     Litigation Costs ($83,433.66) | |
|     Additional Direct Costs ($6,506.08) | |
| **Total** | **$871,384.79** |

**B) Adjusted EAJA Cap Rate –**

| | |
|---|---|
| Attorneys' Fees – | $402,785.40 |
| Paralegal Fees – | $137,198.26 |
| Expert Fees – | $65,750.33 |
|     Nitro ($62,570.33) | |
|     Ossman ($3,180.00) | |
| Expenses/Costs – | $89,939.74 |
|     Litigation Costs ($83,433.66) | |
|     Additional Direct Costs ($6,506.08) | |
| **Total** | **$695,673.73** |

The amount of an award of attorneys' fees and costs is within the trial court's discretion.

Oliveira, 827 F.2d at 744. Where a plaintiff has obtained "excellent results," the fee award

"should not be reduced simply because the plaintiff failed to prevail  on every contention in the

lawsuit." Hensley, 461 U.S. at 435.

## XIII.   **Conclusion**

For the reasons set forth above, HKA respectfully requests that its application for fees,

expenses and costs totaling **$871,384.79** under the EAJA enhanced rate for special factors, or

alternatively, totaling **$695,673.73** under the adjusted EAJA cap rate of $176.32/hour, pursuant

to the EAJA be granted, or such other greater amount as may be justified.

DATED: July 1, 2013                    HUNT ORTMANN PALFFY NIEVES
                                       DARLING & MAH, INC.


                                       By: _____/s/_____

                                            Richard Mah
                                            Hunt Ortmann Palffy Nieves
                                            Darling & Mah, Inc.
                                            301 North Lake Avenue
                                            7th Floor
                                            Pasadena, CA 91101
                                            Tel: 626-440-5200
                                            Fax: 626-796-0107

                                       Attorneys for Plaintiff, Hernandez, Kroone and
                                       Associates, Inc.

Exhibit "A"

**FORM 5**
**EAJA FORM**

**APPLICATION**
**FOR FEES AND OTHER EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT**
Title 28 U.S.C. §2412(d), Title II of Public Law 96-481, 94 STAT 2325

| 1. COURT | 2. DATE FILED | 3. DOCKET NO. |
|---|---|---|
| United States Court of Federal Claims | March 12, 2007 | 07-165c |

| 4. NAME OF APPLICANT (One per form) | 5. GOVERNMENT AGENCY INVOLVED IN CLAIM (Use agency code on reverse side) |
|---|---|
| Hernandez Kroone & Associates, Inc. | DOJ |

**6. NATURE OF APPLICATION**

A. ☑ Original application under 28 U.S.C. §2412(d)(1)(A) after judgment in civil action against U.S.

B. ☐ Appeal of fees and expenses awarded by Lower Court (If Item 6B is checked go to Item 7.)

C. ☐ Original application under 28 U.S.C. §2412(d)(3) after review of agency decision.

D. ☐ Petition for leave to appeal an administrative agency fee determination under 5 U.S.C. §504(c)(2).

**7. APPEAL FROM:**

☐ DISTRICT COURT   ☐ BANKRUPTCY COURT

☐ OTHER:_____

| 7A. DATE FILED IN LOWER COURT | 7B. DOCKET NO. |
|---|---|

| 8. ADMINISTRATIVE AGENCY DOCKET NO. | 9. DATE FILED IN ADMINISTRATIVE AGENCY |
|---|---|

10. SHOWING OF "PREVAILING PARTY" STATUS (28 U.S.C. §2412(d)(1)(B): **Yes. See Motion for Attorneys' Fees.**

Is agency order, court order, or other relevant document attached? ☐ YES ☑ NO

11. SHOWING OF ELIGIBILITY (28 U.S.C. §2412(d)(2)(B)): **Yes. See Motion for Attorneys' Fees.**

Is net worth information attached? ☑ YES ☐ NO

12. ENTER ALLEGATION THAT GOVERNMENT POSITION WAS NOT SUBSTANTIALLY JUSTIFIED (28 U.S.C. §2412(d)(1)(B)):
Plaintiff alleges that the government's position was not substantially justified. Yes. See Motion for Attorneys' Fees.

13. FOR EACH AMOUNT CLAIMED, PLEASE ATTACH ITEMIZATION INDICATING SERVICE PROVIDED, DATE, HOURS, AND RATE (28 U.S.C. §2412(d)(2)(A)):

**AMOUNT CLAIMED**

| | |
|---|---|
| A. ATTORNEY FEES | $ $578,496.46 (enhanced)/$402,785.40 (adjusted) |
| B. STUDY | $ |
| C. ANALYSIS | $ |
| D. ENGINEERING REPORT | $ |
| E. TEST | $ |
| F. PROJECT | $ |
| G. EXPERT WITNESS FEES | $ $65,750.33 |
| H. OTHER FEES AND EXPENSES - SPECIFY | |
| (1) Paralegal Fees | $ $137,198.26 |
| (2) Expenses/Costs | $ $89,939.74 |
| (3) | $ |
| I. TOTAL FEES AND EXPENSES | $ $871,384.79 (enhanced)/$695,673.73 (adjusted) |

| 14. SIGNATURE | 15. DATE |
|---|---|
| [signature] | July 1, 2013 |

NOTE: THIS FORM SHOULD ACCOMPANY YOUR CLAIM WHEN FILED WITH THE CLERK OF COURT

## CERTIFICATE OF FILING

I hereby certify that, on this 1st day of July 2013, a copy of the foregoing **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES; DECLARATION OF LAURENCE LUBKA IN SUPPORT OF PLAINTIFF HERNANDEZ KROONE AND ASSOCIATES, INC.'S MOTION FOR ATTORNEYS' FEES; AND DECLARATION OF RICHARD HERNANDEZ IN SUPPORT OF PLAINTIFF HERNANDEZ KROONE AND ASSOCIATES, INC.'S MOTION FOR ATTORNEYS' FEES** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: ___/s/_____
    Natalie Urbino

561213.1 nu 3291.002